UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSE ANN HOCKEY,

      Plaintiff,                                     Hon. Paul L. Maloney

v.                                                Case No. 1:17-cv-796

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal

standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 52 years of age on her alleged disability date. (PageID.338). She successfully completed high school, and worked previously as a groundskeeper, storekeeper, and buyer. (PageID.69). Plaintiff applied for benefits on October 24, 2013, alleging that she had been disabled since August 5, 2013, due to lumbar fusion, degenerative disc disease, radiculopathy, stenosis, herniated disc, chronic pain, depression, bilateral carpal tunnel syndrome, and bilateral knee pain. (PageID.338-47, 377).

Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (PageID.149-331). On October 8, 2015, Plaintiff appeared before ALJ Patricia Hurt with testimony being offered by Plaintiff and a vocational expert. (PageID.105-47). ALJ Hurt conducted a supplemental hearing on April 20, 2016, at which Plaintiff and a vocational expert testified. (PageID.78-101). In a written decision dated May 12, 2016, the ALJ denied Plaintiff's claim. (PageID.61-71). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.35-40). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3

make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) degenerative disc disease; (2) osteoarthritis; (3) obesity; and (4) right carpal tunnel syndrome, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of

---

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.   (PageID.64-65).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work subject to the following limitations: (1) she is limited to occasional pushing and pulling with her right upper extremity; (2) during an 8-hour workday, she can stand or walk for four hours; (3) she can occasionally climb ramps and stairs; (4) she can frequently balance, stoop, kneel, crouch, and crawl; (5) she is limited to frequent use of her right upper extremity for gross handling; (6) she can only occasionally be exposed to wetness and humidity; (7) no commercial driving; (8) no exposure to hazards such as unprotected heights and uncovered moving industrial machinery; (9) only occasional interaction with the general public; and (10) any time off-task can be accommodated by normal breaks.   (PageID.65-66).

The ALJ found that Plaintiff could not perform any of her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding.  *See Richardson*, 735 F.2d at 964.   While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added).   This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy.  *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there

exist a significant number of jobs which a particular claimant can perform, her limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 96,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.459-62). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits.

I.     **Relevant Medical Evidence**

On September 14, 2012, Plaintiff injured her back "lifting heavy boxes" at work. (PageID.531). Subsequent examinations of Plaintiff's lumbar spine revealed disc bulging and degenerative disc disease. (PageID.532-33, 537-62). On August 6, 2013, Plaintiff underwent back surgery performed by Dr. John Winestone. (PageID.654-55).

On August 20, 2013, Dr. Winestone reported that Plaintiff "has full motor strength and sensation" and is "doing well." (PageID.669). On September 17, 2013, Dr. Winestone reported that Plaintiff exhibited "full motor strength and normal sensation" and was "stable." (PageID.668). An October 14, 2013 examination by Dr. Winestone revealed "full motor strength and full sensation." (PageID.666). X-rays revealed that Plaintiff's lumbar spine was "stable." (PageID.666).

Following a November 5, 2013 examination of Plaintiff, Dr. Winestone reported that Plaintiff exhibited "full motor strength and good sensation." (PageID.664). After reviewing

6

the results of CT and MRI examinations, the doctor observed that Plaintiff experienced "satisfactory decompression and stabilization" with no "mechanical neural element compression or instability." (PageID.664).

Following her back surgery, Plaintiff decided not to return to her job with the City of Grand Rapids and to instead apply for retirement. (PageID.114-15). Rather than apply for early retirement, however, Plaintiff filed for disability so that her pension would not be reduced. (PageID.115-16). In conjunction with this decision, Plaintiff, in the fall of 2013, moved to Beaver Island. (PageID.134-35). As a result of moving to a remote island, Plaintiff had to "fly off the island" and then travel by vehicle a significant distance whenever she wanted to meet with her medical care providers. (PageID.129).

Electrodiagnostic testing performed on December 2, 2013, revealed "evidence of a mild L5 radiculopathy." (PageID.725). X-rays of Plaintiff's lumbar spine, taken on September 30, 2014, revealed "mild to moderate" degenerative changes. (PageID.762). X-rays of Plaintiff's lumbar spine, taken on April 1, 2015, revealed similar findings. (PageID.795-96).

**II.        The ALJ Properly Evaluated the Medical Opinion Evidence**

On July 7, 2014, Dr. Randolph Russo conducted an independent medical examination of Plaintiff. (PageID.886-92). The doctor concluded that "[a]t the present time, no physical restrictions are indicated as related to the prior employment activities." (PageID.891). The ALJ interpreted Dr. Russo's statement as a conclusion that Plaintiff "had no physical restrictions whatsoever." (PageID.68). The ALJ afforded "significant weight" to Dr. Russo's opinion. (PageID.68). Plaintiff argues that she is entitled to relief because the ALJ

7

"mischaracterized Dr. Russo's opinion of Plaintiff's ability to work, rendering her RFC determination unsupported by any medical opinion." The Court is not persuaded.

While Plaintiff is correct that the ALJ arguably misinterpreted Dr. Russo's findings, any such error is harmless and does not undermine the ALJ's opinion. As part of his examination of Plaintiff, Dr. Russo was asked to determine whether Plaintiff's back injury was "solely or directly caused by lifting boxes at her place of employment on September 13, 2012." (PageID.891). Thus, Dr. Russo's conclusion that "[a]t the present time, no physical restrictions are indicated as related to the prior employment activities" should be understood in this context. However, a review of Dr. Russo's findings on examination and other conclusions reveals that the doctor's findings and opinions are not inconsistent with the ALJ's opinion.

In addition to reviewing Plaintiff's medical records,[2] Dr. Russo conducted a physical examination of Plaintiff. With respect to his physical examination of Plaintiff, Dr. Russo reported the following:

Gait: she ambulates with a normal gait pattern. She can rise up on her toes and heels without evidence of weakness. Trendelenburg sign is negative.

Spine: Her spine demonstrates a normal position of the lumbar spine. She forward flexes 20 degrees with complaints of intense low back pain without radiation to the lower extremities. Extension is to neutral with sharp, stabbing pain across her back without radiation to the lower extremities.

---

[2] Plaintiff incorrectly argues that Dr. Russo's findings and opinions should be discounted because the doctor was not provided the results of December 2013 electrodiagnostic testing indicating that Plaintiff experienced a "mild" L5 radiculopathy. In his report, Dr. Russo expressly states that he reviewed the "December 2, 2013, electrodiagnostic study evidence of mild right L5 radiculopathy." (PageID.890).

8

      Musculoskeletal: Hip range of motion is well preserved without pain.   FABER's[3] is nonprovocative.

      Palpation: Palpation demonstrates tenderness at the lumbosacral junction. Tenderness extends to the upper lumbar spine with no paraspinal hypertonicity.   She demonstrates no sacral or buttock tenderness.   There is no PSIS tenderness.

      Neurologic:   Strength is equal and symmetric in all four extremities.   There is no lower extremity muscle atrophy.   Sensory examination on light touch and pinprick is intact. Reflexes are symmetric.   Plantar responses are downgoing.   There is no evidence of clonus. Straight leg raising is negative.   Femoral stretch is negative.

      Vascular:   Pulses are 2+ in the lower extremities.   There is no lower extremity edema.

(PageID.887-88).

      In addition to concluding that Plaintiff experienced "no physical restrictions. . .related to [her] prior employment activities," Dr. Russo also concluded that any physical restrictions Plaintiff experienced "would be related to the degenerative abnormalities in her lumbar spine."   (PageID.891).   In this respect, Dr. Russo concluded that Plaintiff "should maintain a home exercise program and continue to protect her spine as outlined by Dr. Winestone because of the degenerative findings unrelated to prior employment activities."   (PageID.891-92).   Thus,

---

[3] FABER (or Patrick) test is "a screening test for pathology of the hip joint or sacrum."  *See* Special Tests of the Lower Extremity, available at http://physicaltherapy.about.com/od/orthopedicsandpt/ss/LEspecialtests_2.htm (last visited on May 22, 2018).   The test is performed by placing the patient in the supine position and then flexing one leg and placing the foot of that leg on the opposite knee.   The tester then slowly presses down on the superior aspect of the tested knee joint lowering the leg into further abduction.   The motion performed as part of this test is referred to as FABER - **F**lexion, **AB**duction, **E**xternal **R**otation at the hip.   The results are positive if the patient experiences "pain at the hip or sacral joint, or if the leg can not lower to point of being parallel to the opposite leg."   *Id.*

9

Dr. Russo was, in effect, adopting any restrictions or limitations imposed by Dr. Winestone, the physician who performed Plaintiff's back surgery. Plaintiff has failed, however, to identify any opinions or findings by Dr. Winestone which are inconsistent with the ALJ's RFC assessment.

Dr. Russo further concluded that Plaintiff's "ongoing symptom complex is unexplainable from an anatomic standpoint." (PageID.891). This conclusion is supported by Dr. Russo's findings, as well as other medical evidence, and supports the ALJ's observation that "Dr. Russo notes inexplicable inconsistencies in the diagnostic studies compared with the claimant's alleged pain symptoms." (PageID.68). Thus, even assuming the ALJ misinterpreted the portion of Dr. Russo's opinion quoted above, such error is harmless in light of Dr. Russo's other findings and conclusions. *See Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (recognizing that the harmless error doctrine is intended to prevent reviewing courts from becoming "impregnable citadels of technicality"); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 535-36 (6th Cir. 2001) (recognizing that remand to correct an error committed by the ALJ unnecessary where such error was harmless).

Furthermore, Plaintiff's argument that it is improper for an ALJ to "render an RFC unsupported by any medical opinion" has been rejected by the Sixth Circuit. *See, e.g., Rudd v. Commissioner of Social Security*, 531 Fed. Appx. 719, 728 (6th Cir., Sept. 5, 2013) (because "the ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence. . .the ALJ was not required to base her [RFC] determination on a medical opinion," rather the question is simply whether the ALJ's RFC assessment is supported by substantial evidence). Moreover, even if the ALJ were required to support her RFC finding by reference to a medical opinion, her reliance on Dr. Russo's opinion would suffice.

**CONCLUSION**

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: May 23, 2018

/s/ Ellen. S. Carmody
ELLEN S. CARMODY
U.S. Magistrate Judge